Filed 9/8/14  P. v. Salter CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TREVON MARCEL SALTER,<br><br>Defendant and Appellant. | B250452<br><br>(Los Angeles County<br>Super. Ct. No. BA408132) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge.  Affirmed.

Laurie Wilmore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Acting Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Blythe Leszkay and Elaine F. Tumonis, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Trevon Marcel Salter appeals from a judgment which sentences him to an aggregate term of 10 years and 4 months for attempted robbery.[1] (Pen. Code, §§ 664/211.) We affirm.

## FACTS

At about 2:30 in the morning on February 21, 2013, Juan Contreras was walking home from work along 7th Street and turned left onto Broadway. Mr. Contreras had his cell phone in his hand and was putting on headphones at the time. Because of construction, the sidewalk was partially enclosed by scaffolding and plywood that created a narrow passage-way about two and one-half feet wide and six feet long.

Before Contreras reached the scaffolded passageway, he paused to allow two males, later identified as Salter and codefendant Rafael Madrid, to pass him.[2] The two men were walking side-by-side toward Contreras and the passageway was too narrow for all three men to fit. Instead of passing Contreras, Salter and Madrid stopped within one foot of Contreras. Contreras had his back against the wall and he could see Broadway and 7th streets. Salter's back and Madrid's back were toward the street.

Madrid said, "What's up with you?" and pulled out what Mr. Contreras thought was a knife. When Contreras did not respond, Mr. Madrid demanded, "You don't hear me? Give me your phone." Madrid thrust the object that Contreras believed to be a knife upwards two times. Salter remained side-by-side with Madrid, with one hand in his pocket and the other holding a skateboard, but otherwise never moved and did not say anything. Contreras feared for his life because he thought Salter was going to hit him with the skateboard and that Madrid would stab him. Contreras could not find a way to run because there was a wall to one side and a wall to his back.

---

[1] Salter's sentence included a consecutive term for a prior robbery conviction for which he had earlier been placed on probation, and a prior serious felony conviction enhancement based on the prior robbery conviction. (§ 667, subd. (a).)

[2] Madrid and Salter were jointly charged with the attempted robbery of Contreras, and they were tried together. Madrid is not involved in the current appeal.

As these events were unfolding, Contreras saw a police patrol car stopped at the signal. Contreras repositioned himself so that he was no longer blocked from the patrol car's view by a magazine stand. He waved to the officer. At that point, Salter and Madrid turned, saw the patrol car, and fled in opposite directions. Los Angeles Police Department Sergeant Jeritt Severns, the officer in the patrol car, parked in front of Contreras. Contreras told Sergeant Severns that the men tried to rob him by wielding a knife and demanding his cell phone.[3]

Sergeant Severns testified that he was in his patrol car and stopped at the intersection of 7th Street and Broadway when he saw two men standing and facing a third man with only about a foot between them. The positioning of the men seemed odd to him. He saw Contreras raise his arms and yell for help while beginning to run for the patrol car. The other two men turned, saw Sergeant Severns, and then ran or skated away in opposite directions. When Contreras reached the patrol car, he told Sergeant Severns that the men had tried to rob him with a knife and demanded his cell phone.

Sergeant Severns radioed for back up and followed Salter for approximately one-eighth of a mile, never losing sight of him. He was arrested and taken into custody. A perimeter was set up, and other officers detained Madrid. No knife was found in the area and, although Contreras was shown a box cutter and a screwdriver, he did not identify either one as the weapon. At the field show-up, Mr. Contreras positively identified Salter and Madrid, saying he was 100 percent sure that they were the men involved in the incident.

Officer Juan Ibarra interviewed Contreras at the scene that morning for approximately five minutes. Officer Ibarra testified that Contreras spoke rapidly and seemed to be scared. According to Officer Ibarra, Contreras stated that he was walking

---

[3] Contreras's testimony at trial differed from his testimony at the preliminary hearing. At the preliminary hearing, Contreras testified that Salter had the knife and spoke to him, that both men held skateboards, and that Madrid had remained silent. At trial, Contreras claimed not to remember testifying and claimed the incident happened the way he testified to in trial. In argument to the jury, the prosecutor relied on an aiding and abetting theory against Salter.

northbound on Broadway when he saw two men riding skateboards coming south towards him. Because of the construction and the narrow passageway, Contreras stopped to let the men pass but instead, the men stopped, confronted him, and demanded his cell phone. Contreras told Officer Ibarra that the man who had his hand in his pocket made him believe he had a weapon in his pocket and said to him, "What do you got? What do you got?" Contreras then told Officer Ibarra that he (Contreras) saw a patrol car and ran toward it, yelling for help.

Officer Ibarra also testified that Contreras said one man ran northbound on Broadway and the other ran eastbound on 7th Street. Officer Ibarra testified that Contreras stated that the man who ran north had the knife, and that the man who ran east was the one who had his hand in his pocket. The man who ran north was detained by Sergeant Severns and turned out to be Salter.

## DISCUSSION

### I.    Sufficient Evidence Supports the Verdict

Salter contends there was insufficient evidence to support a conviction of aiding and abetting an attempted robbery. Specifically, Salter argues the evidence did not show that he had the specific intent to aid Madrid in committing the robbery, and did not show that he did any act or spoke any words to assist or encourage Madrid to commit the robbery Salter argues the evidence showed no more than that he was present with Madrid, and that he did not try to stop Madrid from committing the robbery. We find the evidence sufficient to support Salter's conviction.

When a criminal conviction is challenged as lacking evidentiary support, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence – that is, evidence which is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We must presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We do not reweigh the evidence and will not reverse a judgment even if a

4

different verdict could reasonably have been reached. (*People v. Proctor* (1992) 4 Cal.4th 499, 529.) The testimony of a single witness is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

To be convicted of aiding and abetting, the prosecution must prove four elements: (1) the principle actor committed the crime, (2) the defendant knew the principle actor intended to commit the crime, (3) the defendant intended to aid in the commission of that crime, and (4) defendant did, in fact, aid, facilitate, promote, encourage, or instigate the commission of that crime. (CALCRIM No. 401.)

We agree with the People that the evidence is sufficient to find that Salter played a supportive role in the attempted robbery by standing next Madrid, and assisting in the intimidation of the victim. While Salter is correct that his mere presence at the scene, and his flight from the scene are insufficient alone to establish aiding and abetting an attempted robbery, we disagree that this is all the evidence shows.

Here, Salter was not merely present at the scene, and did not merely run from the scene. Salter stood shoulder to shoulder with Madrid, the two facing Contreras from a distance of only about one foot. Salter's stance trapped Contreras, led him to believe Salter had a weapon in his pocket, and scared that Salter would hit him with the skateboard. Salter did not merely run from the scene; he and Madrid ran in different directions, making pursuit more difficult.

The evidence provided a sufficient basis from which a reasonable trier of fact could conclude beyond a reasonable doubt that Salter assisted the attempted robbery and shared the intent to commit a robbery when he physically blocked the victim's pathway and intimidated him, thus helping to facilitate the attempted robbery.

## II. The Jury Was Properly Instructed

Salter contends his constitutional right to due process was violated when the trial court instructed the jury on aiding and abetting. Specifically, Salter argues that the use of standard aiding and abetting instruction — CALCRIM No. 401 — failed to explain to the jury that evidence of his presence at the scene and failing to intervene to stop Madrid's attempted robbery were not sufficient to establish his criminal liability as an aider and

5

abettor. Salter argues CALCRIM No. 401 lowered the prosecution's burden of proof in violation of due process.

Salter argues the language of CALCRIM No. 401 failed to communicate to the jury that there must be additional evidence of guilt besides a defendant's presence and failure to prevent a crime, and could have suggested that presence and non-prevention, *together*, are enough to show aiding and abetting. Salter argues the instruction should expressly advise jurors that presence and non-prevention, even together, are not sufficient to show guilt as an aider and abettor. He is mistaken.

The trial court instructed the jury with CALCRIM No. 401 as follows:

> "To prove that a defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: 1. The perpetrator committed the crime; 2. The defendant knew that the perpetrator intended to commit the crime; 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.
> "Someone *aids* and *abets* a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does, in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime [¶] . . . [¶] If you conclude that the defendant was present at the scene of the crime *or* failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. *However, the fact that a person is present at the scene of a crime <u>or</u> fails to prevent the crime does not, by itself, make him an aider and abettor.*" (Emphasis added.)

The instruction clarifies for the jurors that they *may* consider the defendant's presence or the defendant's failure to prevent the crime as evidence of aiding and abetting. But, it further clearly articulates that those fact alone are not sufficient to prove accomplice liability.

The jury was instructed to consider the instructions as a whole and, when read as a whole, it is not reasonably understood to have the meaning that Salter seeks to place on it. The instruction requires that a defendant have the intent to aid in the commission of the

6

crime.  No juror would understand the challenged sentence in isolation and believe that Salter's mere presence or flight, in and of itself, would suffice for accomplice liability.

## DISPOSITION

The judgment is affirmed.

BIGELOW, P.J.

We concur:

FLIER, J.

GRIMES, J.